UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.   11-22173-CIV-MORENO
            (09-20616-CR-MORENO)
MAGISTRATE JUDGE P.A. WHITE

ANDY GEORGES,                          :

            Movant,                    :

v.                                     :          REPORT OF
                                                MAGISTRATE JUDGE
UNITED STATES OF AMERICA,              :

            Respondent.                :
_____

<u>Introduction</u>

This matter is before this Court on Movant's motion to vacate pursuant to 28 U.S.C. §2255, attacking his conviction and sentence entered in Case No. 09-20616-Cr-Moreno.

This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2255 Cases in the United States District Courts.

The Court has reviewed the motion [CV-DE#1], Movant's memorandum in support thereof [CV-DE#4], the government's response [CV-DE#10], Movant's reply [CV-DE#11], and all pertinent portions of the underlying criminal file.

<u>Claims</u>

<u>Ground One:</u>  Ineffective Assistance of Counsel based on his lawyer's failure to conduct a pre-trial investigation of the defense theory.

<u>Ground Two:</u>  Ineffective Assistance of Counsel based on his lawyer's failure to object and challenge the veracity of a key government witness.

<u>Ground Three:</u>  Ineffective Assistance of Counsel based on his lawyer's failure to investigate and introduce favorable evidence at trial.

<u>Ground Four:</u>   Prosecutorial misconduct in closing argument.

<u>Ground Five:</u> Request to be re-sentenced under Amendment 742 to the United States Sentencing Guidelines.

<u>Summary of the Case</u>

Movant's conviction and sentence stem form an incident wherein Miami-Dade police detectives attempted to stop Movant's car for running a red light.  When the detectives activated their lights and sirens, a chase ensued.  CR-DE#67, p.178.  One detective testified that, during the chase, he saw the driver's side window go down, an arm come out, and a small metal object being thrown from the car.  CR-DE#67, pp.178-80.  A second detective testified that he did not see the window roll down or any protruding arm, but that he did see a small metal object come out of the car.  CR-DE#67, pp.218-220, 229.   Both detectives involved in the chase testified that the metal object struck their police car on the right side, lower bumper.  CR-DE#67, pp.180, 219.

Movant slowed down during the chase, and a passenger jumped out of his car.  CR-DE#67, p.188.  Movant then stopped his vehicle, and got out with his hands up.  CR-DE#67, p.188.  Movant's passenger fled on foot, and was never apprehended.  CR-DE#67, p.188.  Movant also attempted to flee, but was arrested a few blocks away.  CR-DE#67, p.192.  Another detective searched the area where the object was allegedly tossed out of the car.  CR-DE#68, pp.10-18.  There he found a firearm, magazine, bullets, and a black "skully" cap.[1]  CR-DE#68, pp.10-18.

_____

[1]A knit, ski-type cap.

Movant was eventually charged with being a felon in possession of a firearm. CR-DE#8. It is undisputed that the theory of defense was that the firearm at issue belonged to Movant's passenger, that the police investigation was inadequate, and that the government simply wanted to secure a conviction. <u>See</u> CR-DE#69, pp.29-44.

Movant was convicted at trial. CR-DE#47. Movant's conviction and sentence were affirmed by the Eleventh Circuit on direct appeal, and Movant then timely-filed the instant motion to vacate pursuant to §2255. CR-DE##55, 81 & 82.[2]

<u>Applicable Standards</u>

*General Standard of Review*

Pursuant to 28 U.S.C. §2255, a prisoner in federal custody may move the court which imposed sentence to vacate, set aside or correct the sentence if it was imposed in violation of federal constitutional or statutory law, was imposed without proper jurisdiction, is in excess of the maximum authorized by law, or is otherwise subject to collateral attack. 28 U.S.C. §2255. If a court finds a claim under Section 2255 to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." <u>Id</u>. To obtain this relief on collateral review, however, a habeas petitioner must "clear a significantly higher hurdle than would exist on direct appeal." <u>United States v.</u> <u>Frady</u>, 456 U.S. 152, 166, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)(rejecting the plain error standard as not sufficiently deferential to a final judgment).

Under §2255, unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no

---

[2]The government has not raised any procedural bars and has responded to all claims on the merits.

3

relief," the court shall "grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. §2255; see, also, Smith v. Singletary, 170 F.3d 1051, 1053 (11th Cir. 1999)("[a] habeas corpus petitioner is entitled to an evidentiary hearing on his claim 'if he alleges facts which, if proven, would entitle him to relief.'" )(internal citations and quotations omitted)). However, the movant in a §2255 proceeding must allege reasonably specific, non-conclusory facts that, if true, would entitle him to relief. Aron v. United States, 291 F.3d 708, 715, n. 6 (11th Cir. 2002). Otherwise, no evidentiary hearing is warranted. Id, 291 F.3d at 714-715 (explaining that no evidentiary hearing is needed when claims are "affirmatively contradicted by the record" or "patently frivolous"); Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989)(noting that a hearing is not required on claims which are based upon unsupported generalizations or affirmatively contradicted by the record).

Moreover, a court need not conduct and evidentiary hearing where the issues can be conclusively decided on the basis of the evidence already in the record, and where the petitioner's version of the facts have already been accepted as true. See, e.g., Turner v. Crosby, 339 F.3d 1247, 1274-75 (11th Cir. 2003); Smith, 170 F.3d at 1054; Schultz v. Wainwright, 701 F.2d 900, 901 (11th Cir. 1983); Roberts v. Marshall, 627 F.3d 768, 773 (9th Cir. 2010). This rule applies equally with regard to claims for ineffective assistance of counsel. Bare and conclusory allegations of ineffective assistance which contradict the record and are unsupported by affidavits or other evidence do not require a hearing. Chandler v. McDonough, 471 F.3d 1360, 1363 (11th Cir. 2006) (no hearing warranted in the absence of any specific factual proffer or evidentiary support); see, also, Diaz v. United States, 930 F.2d 832, 834-35 (11th Cir. 2009)(affirming denial of ineffective assistance claim without evidentiary hearing).

4

*Standard for Claims of Ineffective Assistance of Counsel*

To prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate both (1) that his counsel's performance was deficient, and (2) that he suffered prejudice as a result of that deficient performance.  <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88 (1984).  "To establish deficient performance, a defendant must show that his counsel's representation fell below an objective standard of reasonableness in light of prevailing professional norms at the time the representation took place." <u>Cummings v. Sec'y for Dep't of Corr.</u>, 588 F.3d 1331, 1356 (11th Cir. 2009).  Reasonableness is assessed objectively, measured under prevailing professional norms, and includes a context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time.  <u>Strickland</u>, 466 U.S. at 689.  The standard to be applied is that of a reasonable attorney, not a "paragon of the bar." <u>Hannon v. Sec'y, Dep't of Corr.</u>, 562 F.3d 1146, 1151 (11th Cir. 2009).  "A lawyer can almost always do something more in every case.  But the Constitution requires a good deal less than maximum performance." <u>Atkins v. Singletary</u>, 965 F.2d 952, 960 (11th Cir. 1992).

The court's role in applying <u>Strickland</u>'s first prong is thus not to "grade a lawyer's performance." <u>Van Poyck v. Florida Dept. of Corrections</u>, 290 F.3d 1318, 1322 (11th Cir. 2002)(<u>quoting</u>, <u>Strickland</u>, 466 U.S. at 690).  Instead, the court determines "only whether a lawyer's performance was within "the wide range of professionally competent assistance." <u>Id.</u>  Review of counsel's conduct is to be highly deferential in this regard.  <u>Spaziano v. Singletary</u>, 36 F.3d 1028, 1039 (11th Cir. 1994).  When assessing a lawyer's performance, courts "must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." <u>Chandler v. United States</u>, 218 F.3d 1305 (11th Cir.

2000)(en banc), <u>cert</u>. <u>denied</u>, 531 U.S. 1204 (2001).  Courts should thus start with the presumption of effectiveness, and should always avoid second-guessing an attorney's performance with the benefit hindsight.  <u>White v. Singletary</u>, 972 F.2d 1218, 1220 (11th Cir. 1992); <u>see</u>, <u>also</u>, <u>Williams v. Head</u>, 185 F.3d 1223, 1236 (11th Cir. 1999)("'[I]n retrospect, one may always identify shortcomings,' but perfection is not the standard of effective assistance.")(<u>quoting</u>, <u>Cape v. Francis</u>, 741 F.2d 1287, 1302 (11th Cir.1984)).

With regard to <u>Strickland</u>'s second prong, the defendant must do more than simply show that counsel's conduct might have had "some conceivable effect on the outcome of the proceeding." <u>Strickland</u>, 466 U.S. at 693.  Rather, to demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>  Prejudice is thus established only with a showing that the result of the proceeding was fundamentally unfair or unreliable.  <u>Lockart v. Hill</u>, 506 U.S. 364 (1993). Indeed, as the Supreme Court has indicated, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." <u>Strickland</u>, 466 U.S. at 686.

Finally, it is beyond dispute that, unless a defendant satisfies *both* prongs of the <u>Strickland</u> inquiry, relief should be denied.  <u>Strickland</u>, 466 U.S. at 687.  A court thus need not address both components of the inquiry if the defendant makes an insufficient showing on one.  <u>Id</u>. at 697.  Accordingly, once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been.  <u>Id.</u> at 697; <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000).  And where

"it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." Id. at 697; see, also, Waters v. Thomas, 46 F.3d 1506, 1510 (11 Cir. 1995)(A court "may decline to reach the performance prong of the ineffective assistance test if convinced that the prejudice prong cannot be satisfied.")(citing Strickland, 466 U.S. at 697).

<u>Discussion</u>

In <u>Ground One</u>, Movant alleges ineffective assistance of counsel based on his lawyer's failure to failure to conduct a pre-trial investigation of the defense theory.  Specifically, Movant contends that counsel's failure to adequately investigate resulted in a defense theory that was unsupported by the evidence, that counsel's cross-examinations were deficient, and that counsel should have the "skully" cap tested for DNA.

Effective assistance of counsel embraces adequate pretrial investigation.  <u>See</u>, <u>Strickland</u>, 466 U.S. at 691 (1984).  The correct approach toward investigation, however, "reflects the reality that lawyers do not enjoy the benefit of endless time, energy or financial resources." <u>Rogers v. Zant</u>, 13 F.3d 384, 387 (11th Cir. 1994).  To be effective, a lawyer is not required to "pursue every path until it bears fruit or until all hope withers." <u>Williams v. Head</u>, 185 F.3d 1223, 1237 (11th Cir. 1999)(citation omitted). "The question is whether ... ending an investigation short of exhaustion, was a reasonable tactical decision.  If so, such a choice must be given a strong presumption of correctness, and the inquiry is generally at an end." <u>Mills v. Singletary</u>, 63 F.3d 999, 1024 (11th Cir. 1995) (citation omitted).  And it is axiomatic, of course, that in all cases the defendant must establish prejudice in addition to any alleged deficient performance.  <u>See</u>, <u>Strickland</u>, 466 U.S. at 687-88.

With regard to cross-examination, the decision to cross-examine a witness and the manner in which it is conducted are tactical decisions "well within the discretion of a defense attorney." Fugate v. Head, 261 F.3d 1206, 1219 (11th Cir. 2001)(quoting, Messer v. Kemp, 760 F.2d 1080, 1090 (11th Cir. 1985)). However, trial counsel is not ineffective simply for failing to elicit other testimony from those that testified. Id. at 1220. Rather, in order to establish prejudice, a habeas petitioner must show at least one "specific instance where cross-examination arguably could have affected the outcome . . . of the trial." Id. (quoting Messer, 760 F.2d at 1090); see, also, Aldrich v. Wainright, 777 F.2d 630, 636-37 (11th Cir. 1985), cert. denied, 479 U.S. 918, (1996)(a defendant's conclusory allegations regarding the testimony of uncalled witnesses are insufficient to state a claim of ineffective assistance of counsel).

Here, review of the trial transcripts reveals that counsel pursued what appears to have been the only logical and viable theory of the case, that counsel cross-examined the witnesses accordingly, and that counsel was more than capable in conducting the cross-examinations. In support of his claim that counsel was ineffective, Movant does nothing more than set out what counsel did during cross-examination. See CV-DE#4, pp.2-3. Nowhere does Movant ever state or specify what counsel should have done differently, nor how it would have changed the outcome of the trial. Movant's allegations are thus purely speculative and wholly conclusory and, as such, are insufficient to overcome Strickland's strong presumption of effectiveness. See, Strickland, 466 U.S. at 690 ("counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment"); Fugate, 261 F.3d at 1219 (prisoner must show at least one "specific instance where cross-examination arguably could have affected the outcome . . . of the

8

trial"); <u>Anderson v. Johnson</u>, 1999 WL 362584, *2 (9th Cir. 1999)(unsupported claim that more thorough cross-examination would have elicited favorable evidence amounted to mere speculation insufficient to establish prejudice under <u>Strickland</u>); <u>Archibald v. United States</u>, 2009 WL 2971663, *8 (S.D. Ga. 2009)(same); <u>see also</u> <u>Minigan v. Donnelly</u>, 2007 WL 542137, 22-23 (W.D.N.Y. 2007)(a reviewing court "must avoid confusing true ineffectiveness with mere losing tactics ... a simple disagreement with strategies, tactics or the scope of possible cross-examination, weighed long after the trial, does not suffice")(internal quotations and citations omitted).

Movant's contention that counsel was ineffective in failing to have the "skully" cap tested for DNA is also without merit.  First, Movant does nothing more than make an unsupported assumption that the results of DNA testing would have been favorable to him.  However, the best result that Movant could have hoped for would have been that his DNA was not found on the cap.  This would not have negated the testimony of the one detective who claimed to have seen an arm come out of the driver's side window, or that of either detective that claimed to have seen a metal object come out and strike the right side, lower bumper of their car.  And even assuming DNA testing would have identified Movant's passenger's DNA on the cap,[3] the jury could have drawn any number of inferences from this evidence.  Consequently, it cannot be said that even a "favorable" DNA test result would have changed the outcome of the trial.  Under these circumstances, "defense counsel may have reasonably concluded that the better strategy was to argue in closing that the prosecution, which had the burden of proof beyond a reasonable doubt, did not introduce . . . DNA test results into

---

[3]Which is presumably what Movant theorizes it would have shown.

evidence." <u>Churchwell v. Tilton</u>, 2008 WL 2051711, *17 (C.D. Cal. 2008).  Indeed, what defense counsel argued was:

> And DNA is even easier to find and even more conclusive. Did they even submit this gun for DNA? We're in this big beautiful building. Look how much this place costs to make. And we've got two prosecutors and a case agent here.  This is a very expensive proposition. Did they even submit that for DNA? There's absolutely no testimony about whether they did that. Are they curious as to who committed this crime or do they just want to get a conviction because they made the decision on July 13 when they arrested Andy Georges and they stopped investigating.  They don't want to know that maybe somebody else's DNA is on there. Why didn't they submit it for DNA? And why didn't you hear anything about that? Rest assured if Andy's DNA was on there you would have heard about it. And let's talk about the skully. They even put the skully into evidence. No, you haven't even seen the skully. They wanted to ignore the skully. They didn't even mention it on their open and close. It was found right next to the gun.  They thought enough of it that night to put it in the police report and to take pictures of it. Maybe there's DNA on that.  But maybe that doesn't fit with the theory of the prosecution's case. Where is that skully. What answers lie within that Scully and why haven't we talked about it? Building a case, Ladies and Gentlemen, rather than investigating a case.

CR-DE#69, pp.39-40.  Therefore, Movant cannot establish deficient performance or prejudice.  <u>See</u> <u>LaFevers v. Gibson</u>, 182 F.3d 705, 722 (10th Cir. 1999)(counsel not ineffective in failing to request DNA test where "even favorable DNA test results would not [have made] a difference in [the] case"); <u>Height v. McLaughlin</u>, 2010 WL 4831577, *6-7 (S.D. Ga. 2010)(petitioner did not establish prejudice where his claim was premised on speculation that DNA testing would have been favorable to him); <u>Rogers</u>, 13 F.3d at 387 (noting limitations on counsel's resources); <u>Williams</u>, 185 F.3d at 1237 (noting that, to be effective, counsel need not "pursue every path"); <u>see</u> <u>also</u> <u>Scarlett v. Dept. of Corr.</u>, 404 Fed.Appx. 394, 398-401 (11th Cir. 2010)(DNA evidence establishing that third person

wore ski mask did not exonerate defendant); <u>Arujo v. Chandler</u>, 435 F.3d 678, 681 (7th Cir. 2005)(DNA evidence did not conclusively rule out defendant as perpetrator of the crime); <u>Patterson v. California</u>, 2008 WL 3498863, *1-2 (N.D. Ca., Aug. 12, 2008)(DNA re-test excluding defendant and his co-defendant as source of blood did not exonerate petitioner).

In <u>Ground Two</u>, Movant alleges ineffective assistance of counsel based on his lawyer's failure to object and challenge the veracity of a key government witness. Specifically, Movant contends that counsel should have objected when the detective who claimed to have seen the arm come out of the car demonstrated what he allegedly saw. Movant's position is that, because the detective testified that the driver threw the object "back or toward - - over the vehicle . . .," the detective's testimony was uncertain and the demonstration was therefore improper.

Movant's contention is wholly without merit. There was simply nothing improper or objectionable about the demonstration. It is not professionally unreasonable for a lawyer to fail to pursue issues which have little or no chance of success, and a criminal defendant is not prejudiced by counsel's failure to pursue non-meritorious claims or those on which they likely would not have prevailed. <u>See generally</u> <u>Strickland</u>, 466 U.S. at 690 ("counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment"); <u>Knowles v. Mirzayance</u>, 129 S.Ct. 1411, 1422 (2009)(the law does not require counsel to raise every available non-frivolous defense); <u>Chandler v. Moore</u>, 240 F.3d 907, 917 (11th Cir. 2001)(counsel is not ineffective for failing to raise a non-meritorious objection); <u>United States v. Winfield</u>, 960 F.2d 970, 974 (11th Cir. 1992)(failure to raise meritless issues cannot prejudice a client); <u>Card v. Dugger</u>, 911 F.2d 1494, 1520 (11th Cir. 1990)(counsel is not required to raise meritless issues); <u>Iron Wing</u>

v. United States, 34 F.3d 662, 665 (8ᵗʰ Cir. 1994)(movant not prejudiced by counsel's failure to file motion to suppress that would have been denied); James v. Borg, 24 F.3d 20, 27 (9ᵗʰ Cir. 1994)(counsel's failure to make futile motions does not constitute ineffective assistance); United States v. Hart, 933 F.2d 80, 83 (1ˢᵗ Cir. 1991)(counsel is not required to waste the court's time with futile or frivolous motions).

In Ground Three, Movant alleges ineffective assistance of counsel based on his lawyer's failure to investigate and introduce favorable evidence at trial. Specifically, Movant contends that counsel should have listened to and introduced a recording of the police audio transmission from the night of his arrest, wherein the detective who claimed not to have seen the arm come out of the car allegedly stated "there's one more at large, but we'll get him in a minute; like I said, he tossed something out." CV-DE#4, p.17.⁴

Assuming without deciding that counsel was deficient in failing to listen to the audio recording in advance of trial, Movant still cannot establish prejudice. See Strickland, 466 U.S. at 697 (where "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed"). Movant argues the recording would have undermined the testimony of the first detective who claimed to have seen an arm come out of the driver's side window, and would have further established that the second detective saw Movant's passenger throw the gun out of the car. CV-DE#4, pp.17-19. Movant is mistaken. Counsel would not, in fact, have been able to introduce the recording for purposes of proving the truth of the matter that Movant contends is asserted therein; that is, that it

⁴Neither party has provided a transcript of the radio transmission, and it does not appear to be part of the record. However, the government has not taken issue with Movant's representation as to the content of the recording. The Court thus assumes for purposes of resolving this motion only that the above-quoted language is what the transcript would in fact reflect.

was Movant's passenger who threw the gun out of the car.  <u>See</u>, <u>Shankle v. Unger</u>, 2011 WL 1322017, *8 (E.D.N.Y. 2011)(rejecting claim of ineffective assistance where prisoner failed to show that out-of-court statements contained on records of police radio transmissions were not hearsay and were admissible at trial). "Defense counsel is not ineffective for failing to take a futile endeavor." <u>Id.</u> <u>citing</u> <u>Knowles v. Mirzayance</u>, ---U.S. ----, ----, 129 S.Ct. 1411, 1421, 173 L.Ed.2d 251 (2009).

The most counsel could have done with the recording at issue would have been to attempt to impeach the second detective with it. But the statement that Movant relies upon is by no means conclusive of anything.  It is vague, at best, and thus subject to any number of explanations.   Movant's unsupported assumption that counsel could have used it to "extract . . . favorable evidence . . . during cross-examination" is thus not only purely speculative, it is belied by the record.  As such, Movant's wholly conclusory allegations are insufficient to establish prejudice. <u>See</u> <u>Fugate</u>, 261 F.3d at 1219 (prisoner must show at least one "specific instance where cross-examination arguably could have affected the outcome . . . of the trial"); <u>Anderson</u>, 1999 WL 362584 at *2 (unsupported claim that more thorough cross-examination would have elicited favorable evidence amounted to mere speculation insufficient to establish prejudice under <u>Strickland</u>); <u>Archibald</u>, 2009 WL 2971663 at *8 (same).

In <u>Ground Four</u>, Movant alleges prosecutorial misconduct in closing argument.   Specifically, Movant contends that the government made statements that misled the jury into believing that both detectives testified that they saw the gun being thrown from the driver's side of the car, that the government intentionally mis-stated defense counsel's argument on reasonable doubt, and that the government impermissibly vouched for one of its witnesses.

13

To prevail on a claim of prosecutorial misconduct, a petitioner must demonstrate that the prosecutor's conduct violated a specific constitutional right or infected the trial with such unfairness as to make the resulting conviction a denial of due process. Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). It is not enough to show that the prosecutor's conduct or remarks were undesirable or even universally condemned. Darden v. Wainwright, 477 U.S. 168, 181 (1986). In other words, the complained-of conduct must be so egregious as to render the entire trial fundamentally unfair. Donnelly, 416 U.S. at 642-45. In assessing whether the fundamental fairness of the trial has been compromised, the totality of the circumstances are to be considered in the context of the entire trial. Hance v. Zant, 696 F.2d 940, 951 (11 Cir. 1983), *overruled on other grounds*, Brooks v. Kemp, 762 F.2d 1383 (11th Cir. 1985); see, also, United States v. Hernandez, 145 F.3d 1433, 1438 (11th Cir. 1998). Factors to be considered include the degree to which the challenged remarks have a tendency to mislead the jury and prejudice the accused, whether they are isolated or extensive, whether they were deliberately or accidentally placed before the jury, and the strength of the competent proof to establish the guilt of the accused. Hance, 696 F.2d at 950, n.7. As such, a determination of whether the fundamental fairness of the trial has been compromised " . . . depends on whether there is a reasonable probability that, in the absence of the improper remarks, the outcome of the trial would have been different." Williams v. Weldon, 826 F.2d 1018, 1023 (11 Cir.); see, also, Hernandez, 145 F.3d at 1438. Indeed, even when a prosecutor's comments are improper, that conduct does not render a conviction fundamentally unfair where there is overwhelming evidence of the defendant's guilt. See, Hance, 696 F.2d at 951. Moreover, improper comments may be rendered harmless by adequate jury instructions. See, United States v. Simon, 964 F.2d 1082,

14

1087 (11th Cir. 1992); <u>see</u>, <u>also</u>, <u>United States v. Chirinos</u>, 112
F.3d 1089, 1100 (11th Cir. 1997).[5]

In support of this claim that that the government made
statements that misled the jury into believing that both detectives
testified that they saw the gun being thrown from the driver's side
of Movant's car, Movant cites the following statement:

> Ladies and Gentlemen, we know what happened because the
> detectives were there and told us. It was thrown from the
> driver's side.

CR-DE#69, p.49.   Almost immediately thereafter, however, the
prosecutor went on to state:

> He was driving the car, undisputed.   The driver's side
> window goes down.   Immediately the arm comes out.   The
> gun comes back.   Detective Amaran told you that.

CR-DE#69, p.49.

In support of this claim that the government intentionally
mis-stated defense counsel's argument on reasonable doubt, Movant
cites the following statement:

> Ladies and Gentlemen, he's trying to say that if you have
> any doubt whatsoever, you must acquit.   That's not the
> instruction.   That's not the instruction.   Beyond a
> reasonable doubt.

CR-DE#69, p.49.  This comment was in response to defense counsel's
argument regarding reasonable doubt, which was as follows:

> To find beyond a reasonable doubt, you need to be able to
> rely on it like you would in your most important affairs
> of your life.   That's like choosing a spouse, buying a
> house, picking a doctor for an important medical
> procedure.   These are the types of certainty that you
> need to have before you find [Movant] guilty.   And this

---

[5]Attempts to bolster a witness by vouching for his credibility are
normally improper.  <u>See</u>, <u>United States v. Hernandez</u>, 921 F.2d 1569 (11th Cir.
1991).  However, the prohibition against vouching does not forbid prosecutors
from arguing the credibility of a witness, which may be central to the case.
<u>Id.</u> at 1573.  Rather, it forbids the government from arguing credibility based
on the reputation of the government office or on evidence not before the jury.
<u>Id.</u>

15

is a great thing about our country because our founding
fathers said  that we're going to do everything we can
not to send an innocent man to jail.  So it's clearly
it's a protection to the defense.  It's also, Ladies and
Gentlemen, a protection for you all because, God forbid,
tomorrow or a week from now or a year from now when you
think about this experience, the last thing you want to
have in your mind is did I take a mistake because when
deciding somebody's liberty, you better be sure.  You
better be certain.

CR-DE#69, p.43.

Finally, in support of his claim that the government
impermissibly vouched for one of the government's witnesses, Movant
cites the following statement:

Everything else he told you the defense goes along with,
right?    There's no dispute that the defendant was
driving the car just as Detective Amaran told us.
There's no dispute that he ran the stop sign just as
Detective Amaran told us.  There's no dispute that he
took this turn at this intersection just as Detective
Amaran told us.  Ladies and Gentlemen, there's no dispute
that the passenger fled the car just as Detective Amaran
told us.  No dispute that the defendant fled from the car
and gave them the chase just as Detective Amaran told us.
So everything else the detective says is true except that
one fact about what happened at this intersection.  And
why? Why is he saying that's a lie? Because that's what
convicts the defendant.    That's what convicts the
defendant. We believe everything else Detective Amaran
said except that.  He came in here and made that up.
Ladies and Gentlemen, you judge his credibility.

CR-DE#69, p.46.

There is thus simply nothing whatsoever in the record that
even begins to approach the standard required to establish a claim
of prosecutorial misconduct.  First, the prosecutor's comments that
allegedly mislead the jury regarding the substance of the officers'
testimony were arguably not misleading even when viewed in
isolation, and were certainly not misleading when viewed in
context.  Moreover, the jurors were instructed that what the
lawyers say is not evidence, and that they were to rely on their

16

own recollections of what occurred at trial. Next, the prosecutor's comments regarding defense counsel's reasonable-doubt argument amounts to nothing more than a fair response to defense counsel's closing argument. It is also an accurate statement of the law, and one on which the jury was instructed. Finally, the prosecutor's comments regarding the witness' credibility does not amount to impermissible vouching. The comments in no way placed the prestige of the government behind the witness and, regardless, the jurors were instructed that they were the sole judges of credibility.

In sum, Movant's allegations of prosecutorial misconduct are belied by the record. The prosecutor did not make any comments that would have a tendency to mislead the jury and prejudice Movant, and the remarks at issue were extremely isolated. Moreover, there is nothing to suggest that the prosecutor deliberately made any improper comments. Indeed, when viewed in context and in its entirety, review of the record can only support the conclusion that the prosecutor's closing argument was made in good faith. In addition, there was more than enough competent proof to establish Movant's guilt, and the jury received appropriate instructions. Under these circumstances, Movant cannot establish that any of the complained-of comments rendered his trial fundamentally unfair. Consequently, this claim fails. See Donnelly, 416 U.S. at 642-45 (prisoner must demonstrate that the prosecutor's conduct violated a specific constitutional right or infected the trial with such unfairness as to make the resulting conviction a denial of due process); Hance, 696 F.2d at 950-51 (factors are to be considered in the totality of the circumstances, and include the degree to which the challenged remarks have a tendency to mislead the jury and prejudice the accused, whether they are isolated or extensive, whether they were deliberately or accidentally placed before the jury, and the strength of the

17

competent proof to establish the guilt of the accused); <u>Williams</u>, 826 F.2d at 1023 (a determination of whether the fundamental fairness of the trial has been compromised depends on whether there is a reasonable probability that the outcome of the trial would have been different); <u>see</u> <u>also</u> <u>Simon</u>, 964 F.2d at 1087 (improper comments may be rendered harmless by adequate jury instructions).

In <u>Ground Five</u>, Movant requests to be re-sentenced under Amendment 742 to the United States Sentencing Guidelines. Specifically, Movant asks that the Court reduce his base offense level by two (2) points that were added because his offense was committed within two (2) years of his release from prison pursuant to Amendment 742.  In his reply, however, Movant concedes that Amendment 742 is not retroactive and, therefore, does not apply to his case.  CV-DE#11, p.7.

Conclusion

Based upon the foregoing, it is recommended that the motion to vacate be DENIED.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

SIGNED this 12th day of January, 2012.

_____
UNITED STATES MAGISTRATE JUDGE

cc: Andy Georges, pro se
    Reg. No. 86257-004
    FCI - Williamsburg
    Federal Correctional Institution
    P.O. Box 340
    Salters, SC 29590

    Christopher Parente, AUSA
    United States Attorney's Office
    99 N.E. 4th Street
    Miami, FL 33132